**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROSS ANDREW MCDANIEL,<br><br>*Plaintiff*,<br><br>v.<br><br>SGT. RONALD IVENER, et al.,<br><br>*Defendants*. | Case No. 26-2014-EFM-ADM |

**MEMORANDUM AND ORDER**

Before the Court are two motions to dismiss brought by Defendants Seargent Ronald Ivener, Officer Zachary Isaac, Officer Jeremiah Risner, Officer Eric Stockman, and Officer Zarnowiec. Defendants first filed a Motion to Dismiss pro se Plaintiff Ross Andrew McDaniel's Amended Complaint (Doc. 18). Because Plaintiff subsequently filed a Second Amended Complaint ("SAC"), the Court denies Defendants' first Motion as moot. Defendants then filed a second Motion to Dismiss (Doc. 29). In their second Motion, Defendants request that the SAC be dismissed under Rule 12(b)(6). For the following reasons, the Court grants in part and denies part.

## I. Factual & Procedural Background[1]

Late on January 14, 2024, the Lawrence Police Department ("LPD") received a report made by Plaintiff's co-parent. The report's contents are not provided, but based on the SAC's

[1] The facts in this section are taken from Plaintiff's SAC unless otherwise cited.

allegations, the report involved an allegation of abuse occurring at Plaintiff's residence.[2] At the time, Plaintiff was at his residence at 413 North John Doy Court, Lawrence, Kansas ("the Residence"), exercising court-ordered parenting time with his four children.[3] Two juvenile guests and Plaintiff's then-partner were also at the Residence. Plaintiff's co-parent was not at the Residence but instead made the report based on information received from the children.

Officers Isaac, Stockman, and Risner arrived at the Residence in response to the report. Officer Isaac approached the front door and knocked. Plaintiff did not answer the door, repeatedly told Officer Isaac to leave, and denied the officers permission to remain on the property. Officer Isaac told Plaintiff that Plaintiff was not free to leave, Plaintiff was being detained, and Officer Isaac was trying to determine whether a crime had occurred. Officers Stockman and Risner then joined Officer Isaac at the front door.

Plaintiff's partner answered the door and spoke with the officers outside. She denied that Plaintiff had physically struck or harmed her and stated that the children were okay. She did not request police entry or assistance. She further had no observable injuries. Officer Stockman commented that he had seen the children through an upstairs window. The officers left Plaintiff's partner at the front door and spoke with Plaintiff's co-parent on the street.[4] They then returned after Plaintiff's partner signaled to them and reported that she was unable to reenter. The officers

---

[2] Based on the SAC, the Court is not certain whether the alleged abuse involved Plaintiff's children, Plaintiff's partner, or both. It is further not stated whether the report alleged that Plaintiff was the aggressor, though it appears this was the case given the LPD's response.

[3] The SAC does not explicitly state the number of children in the Residence, but based on the pleaded allegations, the Court identifies that Plaintiff's "oldest child," "second-oldest child," "youngest child," and a fourth child were present.

[4] The SAC states that the officers went "to speak with the *reporting party* in the street." Because the SAC only identifies Plaintiff's co-parent as the reporting party, the Court assumes that the officers spoke with Plaintiff's co-parent.

placed Plaintiff's partner in one of their vehicles. Plaintiff then set a pair of boots outside the front door for her, and one of the officers retrieved these boots and gave them to Plaintiff's partner.

Around the time that Plaintiff's partner was brought to the vehicle, Plaintiff's oldest child opened the door and stepped outside. She had no observable injuries. Plaintiff then took her arm and brought her back inside. The officers at the scene described the contact as minimal and within the bounds of acceptable parental contact. Officer Risner then left the pathway leading to the front door, crossed the front lawn, went around the corner of the Residence, and approached a side window. The side window is twelve feet around the corner from the front-door area with no pathways leading to or entrances near it. Upon arriving at the side window, Officer Risner peered inside, banged on the window, and yelled, "Let her go!"

At about the same time, a family member of the two juvenile guests arrived in a vehicle. While officers remained at the front door, the two juvenile guests exited out the back of the Residence. They then climbed the backyard fence because a snowpack obstructed the gate. The officers noticed this and directed the two juvenile guests to the vehicle.[5] None of the officers asked the two juvenile guests any questions. The two juvenile guests had no observable injuries.

Officer Stockman, meanwhile, requested additional officers. Officer Risner returned from the side window and met with Officer Stockman. Officer Stockman consulted with the other officers about whether they had evidence supporting the risk of danger to anyone inside or whether Plaintiff's conduct constituted a crime. They also discussed whether they could justify forced entry. Officer Risner did not endorse forced entry, and Officer Isaac stated that he did not hear enough from the children to ascertain danger. Officer Stockman described the situation as a "gray area." The three officers continued to contain and survey the Residence until more officers arrived.

[5] Though not stated, the Court presumes the vehicle belonged to the two juvenile guests' family member.

Seargent Ivener later arrived, followed by Officer Zarnowiec. Officer Risner briefed Seargent Ivener on what had occurred up to that point. The two agreed that there was no probable cause for a criminal charge at that time. Seargent Ivener proposed obtaining Plaintiff's phone number to call and explain that they only wanted to talk. However, no phone call was ever made. Officer Zarnowiec then issued commands to one of the children standing behind an upstairs window. He instructed the child to open the window. The SAC does not provide whether the child did in fact open the window or whether any words were exchanged. It is also not stated where Officer Zarnowiec was standing when this occurred.

Seargent Ivener then approached the front door. He knocked on it and the surrounding windows. Plaintiff's second-oldest child opened the door in response. The child was not crying, did not report any injury, did not identify anyone needing aid inside, and did not request that the officers enter the Residence. However, after opening the door, she became emotionally distressed. She was then directed away from the Residence toward one of the vehicles.

At this point, the officers did not possess a warrant to search the Residence or to arrest Plaintiff. However, once Plaintiff's second-oldest child opened the door, Seargent Ivener crossed the Residence's threshold. He did not obtain consent from Plaintiff or Plaintiff's children. Officers Zarnowiec, Isaac, and Stockman followed Seargent Ivener into the Residence. Nothing inside suggested that any violent conflict had occurred: there were no objects or fixtures damaged and there were no signs of blood. The officers did not encounter any active altercation, nor did they find anyone in need of medical attention or having observable injuries.

When the officers entered, Plaintiff was standing on the bottom step of a staircase leading to the Residence's second floor. He repeatedly told the officers to leave. Plaintiff's oldest child stood behind Plaintiff, holding Plaintiff's youngest child. The oldest child appeared emotionally

upset, but neither child had any observable injuries. Plaintiff's oldest child told the officers that another child was upstairs. She did not state that the child needed aid or that the child was injured. In response, Seargent Ivener stated that he wanted to go upstairs and directed Plaintiff to move. Plaintiff refused, stated that Seargent Ivener was not allowed upstairs, and continued asking the officers to leave. Seargent Ivener interrupted Plaintiff during this exchange, spoke loudly, waved his hand in Plaintiff's face, and came into close proximity with Plaintiff.

Seargent Ivener attempted to pass Plaintiff and ascend the staircase by moving through a space roughly four to five inches wide between Plaintiff and the wall. While doing so, he grasped Plaintiff's left arm and pulled it. This caused Plaintiff, who was still standing on the bottom step, to lose balance. Plaintiff instinctively placed his open palm on Seargent Ivener's upper body. Plaintiff made no other advances toward Seargent Ivener. In response, Seargent Ivener pulled Plaintiff onto the floor. Seargent Ivener announced that Plaintiff was under arrest. Plaintiff displayed his hands, stated he was not resisting, and complied with the officers' instructions. He was handcuffed, searched, and transported out of the Residence. Meanwhile, Officer Risner entered the Residence and investigated the second floor without Plaintiff's consent. The upstairs search did not reveal any injured persons or ongoing emergencies.

LPD detained Plaintiff for approximately 40 hours and charged him with battery of a law-enforcement officer and interference with law enforcement. The resulting criminal case was ultimately dismissed. Officer Isaac submitted a Department for Children and Families ("DCF") report concerning the above-described events, which impacted Plaintiff's child-welfare and family-court proceedings. DCF ultimately found the allegations of abuse unsubstantiated.

Plaintiff brought this 42 U.S.C. § 1983 action on January 12, 2026, seeking relief for constitutional violations committed by Defendants, lost income, and other damages. On July 28, 2026, Plaintiff filed the SAC. Defendants now move to dismiss.

## II. Legal Standard

### A. Rule 12(b)(6) Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[6] Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[7] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to infer reasonably that the defendant is liable for the alleged misconduct.[8] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[9] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[10] Viewing the complaint in this manner, the Court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[11] If the allegations in the

---

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citation modified); *see also* Fed. R. Civ. P. 8(a)(2).

[10] *Iqbal*, 556 U.S. at 678–79.

[11] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation modified)).

complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[12]

**B. Construing Pro Se Complaints**

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[13] A pro se litigant is entitled to a liberal construction of his pleadings.[14] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[15] But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[16] As it relates to motions to dismiss generally, the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[17] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]

## III. Analysis

Defendants argue that Plaintiff's § 1983 action fails because qualified immunity protects them from suit. "This defense shields government officials performing discretionary functions

---

[12] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[13] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[14] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Id.*

[17] *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[18] *Iqbal*, 556 U.S. at 678.

from liability if their conduct does not violate clearly established rights of which a reasonably government official would have known."[19] When a § 1983 action is brought "against multiple individual governmental actors, it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her."[20]

"Whether a defendant is entitled to qualified immunity is a two-step process."[21] "[T]he plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct."[22] "A right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."[23] "[T]he contours of the right must be sufficiently clear so that a reasonable official would understand what he is doing violates that right."[24] Still, the Court's analysis should not be a "scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of the clearly established law."[25]

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."[26] "The operation of this standard, however, depends

---

[19] *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citation modified).

[20] *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)).

[21] *Graves*, 450 F.3d at 1218.

[22] *Truman*, 1 F.4th at 1235.

[23] *Id.* (citation modified).

[24] *Id.* (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

[25] *Id.* (quoting *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020)).

[26] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

substantially upon the level of generality at which the relevant 'legal rule' is to be identified."[27] "The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have 'reasonable, but mistaken beliefs' as to the application of law to facts and operates to protect officers from the sometimes 'hazy border[s]' of the law."[28] "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning."[29] Furthermore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[30] Still, "the clearly established law must be 'particularized' to the facts of the case."[31] And "in the light of pre-existing law the unlawfulness must be apparent."[32]

"District courts may grant a motion to dismiss based on qualified immunity, but asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects a defendant to a more challenging standard of review than would apply on summary judgment."[33] Thus, "the operative question is whether the plaintiff has 'ple[d] factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights.'"[34]

With these principles in mind, the Court addresses the SAC's three Counts in turn.

### A. Count I: Unreasonable Physical Intrusion, Warrantless Entry, and Search

In Count I, Plaintiff contends that Defendants violated the Fourth Amendment's guarantee against unreasonable searches and physical intrusions through four different actions: (1) Officer

---

[27] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[28] *McGarry v. Bd. of Cnty. Comm'rs for Cnty. of Lincoln*, 294 F. Supp. 3d 1170, 1187 (D.N.M. 2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

[29] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[30] *Id.*

[31] *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson*, 483 U.S. at 640).

[32] *Id.* at 80 (quoting *Anderson*, 483 U.S. at 640).

[33] *Truman*, 1 F.4th at 1235 (citation modified).

[34] *Harris v. City of Texico*, 2023 WL 2392798, at *3 (D.N.M. Mar. 7, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 666).

Risner's presence at the side window, (2) Officer Zarnowiec's command to a child at the upstairs window, (3) the warrantless entry by all Defendants into the Residence, and (4) Defendants' continued presence in the Residence and Officer Risner's upstairs search. Confusingly, Defendants also spill ink arguing that the officers' presence at the front-door area did not constitute a Fourth Amendment violation. The SAC, however, does not appear to bring this claim, and Plaintiff's Response confirms as much. Thus, the Court only analyzes the four actions listed above.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[35] "Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"[36] Save for Officer Zarnowiec's command, Defendants do not dispute that these actions are searches under the Fourth Amendment. The SAC further claims that Defendants never obtained a warrant prior to these searches. Therefore, the Court treats these actions as warrantless searches and now determines whether any exceptions apply.

*1. Officer Risner's Presence at the Side Window*

Plaintiff argues that Officer Risner unreasonably searched the Residence's curtilage by moving from the front-door area, around the corner of the Residence, and to the side window.[37] In other words, Plaintiff claims the presence at the side window violated a constitutional right and that this right was clearly established at the time of Officer Risner's actions such that he is not

[35] U.S. CONST. amend. IV.

[36] *United States v. Hay*, 601 F. Supp. 3d 943, 946 (D. Kan. 2022) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

[37] Before addressing the substance of this claim, the Court observes that, even if it is meritorious, it can be brought only against Officer Risner, as the SAC does not allege that the other Defendants unreasonably searched the Residence's curtilage.

entitled to qualified immunity. The Court therefore analyzes Officer Risner's search via these two prongs below.

a. Violation of a Constitutional Right

The Fourth Amendment protects a home's curtilage from warrantless searches.[38] Defendants do not argue that the area outside the side window is not within the curtilage. Instead, they argue that Officer Risner's actions were excused because exigent circumstances existed, allowing him to go beyond the implied license of the front-door area.[39] Thus, the Court only focuses on whether exigent circumstances permitted Officer Risner's actions.

"Warrantless entry into the curtilage of a home is permitted if there are exigent circumstances . . . ."[40] "The existence of exigent circumstances is a mixed question of law and fact."[41] "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury."[42] "In determining whether the risk of personal danger creates exigent circumstances, [courts] use a two-part test: 'whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable.'"[43] "Under these circumstances, officials do not need probable cause."[44] However, "officers may not

---

[38] *Oliver v. United States*, 466 U.S. 170, 180 (1984).

[39] *See French v. Merrill*, 15 F.4th 116, 134 (1st Cir. 2021) ("Whereas the scope of the exigent circumstances exception is case-specific and varies based on the nature of the exigency and severity of the underlying crime, the scope of the knock and talk exception is limited to the implied social license to enter the property of another regardless of the nature of the suspected crime of interest to the officers." (citation modified)).

[40] *United States v. Truong Son Do*, 62 F. Supp. 3d 1236, 1247 (N.D. Okla. 2014) (citing *United States v. Cousins*, 455 F.3d 1116, 1122 (10th Cir. 2006)).

[41] *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992).

[42] *Lowther v. Child. Youth & Fam Dep't*, 101 F.4th 742, 760 (10th Cir. 2024) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

[43] *United States v. Gordon*, 741 F.3d 64, 70 (10th Cir. 2014) (quoting *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006)).

[44] *Lowther*, 101 F.4th at 760 (citation modified).

simply recite urgent needs without factual support. Otherwise, the exception swallows the rule."[45] Furthermore, an "officer's subjective motivation is irrelevant."[46] Instead, courts "evaluate whether the officers were confronted with reasonable grounds to believe there was an immediate need 'guided by the realities of the situation presented by the record' from the viewpoint of 'prudent, cautious, and trained officers.'"[47] No single set of facts or factors must be present; rather, this analysis is guided by the totality of the circumstances.[48]

Defendants argue that the events leading up to Officer Risner's approach to the side window excuse the absence of a warrant. They specifically highlight: Plaintiff's partner being locked out of the Residence, a child opening the front door and Plaintiff bringing her back inside, the emotional distress of the children, and the two juvenile guests leaving the Residence and trying to climb over the backyard fence.

The Court disagrees. To begin with, Defendants misstate the SAC's facts. At this point in the SAC's sequence of events, nothing says that the children were exhibiting signs of emotional distress. Instead, the children's emotional distress is mentioned later, when Plaintiff's second-oldest child opened the door during Seargent Ivener's knocking and again after the officers entered the Residence. The Court must also consider the facts disregarded by Defendants: the original report made to LPD, the officers' conversation with Plaintiff's partner, visual confirmation of the children's well-being, the absence of anything suggesting any ongoing conflict inside the

---

[45] *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007).

[46] *Brigham City*, 547 U.S. at 404; *see also United States v. Chavez*, 643 F. Supp. 3d 1285, 1298–99 (D.N.M. 2022) (finding that, although officers possessed a subjective belief that exigent circumstances existed, their belief was not objectively reasonable).

[47] *Najar*, 451 F.3d at 718–19 (quoting *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)).

[48] *Id.* at 719–20; *see also Missouri v. McNeely*, 569 U.S. 141, 149 (2013) ("To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances.").

Residence, and the lack of any observable injuries on Plaintiff's partner, the two juvenile guests, or the children. All of these facts must be considered in totality to determine whether the pleaded allegations show the existence of an exigency.

While the SAC states the officers were responding to a report of abuse, this report alone does not permit a warrantless entry. The Tenth Circuit has reasoned that:

> A report of a domestic [dispute]—standing alone—does not demonstrate exigent circumstances per se. Thus, officers responding to a report of a domestic dispute must point to *something* beyond the mere fact of an argument to demonstrate an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others.[49]

In some cases, the contents, context, and specificity of a report may be enough to support the exigent circumstances exception.[50] Additionally, greater concern may exist where the individual making the report remains inside the constitutionally protected area.[51] But here, the SAC does not plead the report's contents. The report was further made by Plaintiff's co-parent who was not inside the Residence and thus faced no immediate danger. With the report's contents unknown, the Court will not assume that the report itself provided an independent basis for Officer Risner's actions. Consequently, something beyond this report is required to support that there was an exigency.

Here, the events occurring after officers arrived do not provide an objectively reasonable belief that there was an exigency. To be sure, the report itself, Plaintiff's refusal to speak with

---

[49] *Storey v. Taylor*, 696 F.3d 987, 994 (10th Cir. 2012) (citation modified).

[50] *See, e.g.*, *West v. Keef*, 479 F.3d 757, 759 (10th Cir. 2007) (finding that statements by a 12-year-old boy during a 911 call that his mother was "going crazy," "trying to kill herself," and "trying to cut her[self] with a knife" were, standing alone and in context, sufficient to justify the warrantless entry by police).

[51] *See Gordon*, 741 F.3d at 70 (finding an officer's warrantless entry into a home reasonable because, although there was no violence actively occurring, the victim had reported earlier acts of violence committed by the perpetrator, that she was still inside the home with the perpetrator, and that she feared the perpetrator would seriously harm her for contacting the police); *Najar*, 451 F.3d at 720 (finding exigent circumstances where officers could reasonably believe that someone was inside the home who had made a 911 call and another individual was preventing the person in need from communicating with safety officials).

police, and Plaintiff's decision to keep his partner out of the Residence support the continued police presence. However, other facts and lack thereof cut against Officer Risner's disposal of the warrant requirement. First, no facts suggest that any violence, argument, or altercation occurred immediately prior to or during the police response.[52] Defendants suggest an altercation occurred when Plaintiff's oldest child opened the front door and Plaintiff took the child's arm to bring her back inside. But the SAC states that this contact was described on scene by the responding officers as "very minimal" and within the bounds of acceptable parental contact. This does not suggest an immediate need to protect the child's safety.

Second, officers obtained visual confirmation of the children's well-being before Officer Risner entered the curtilage. Visual confirmation occurred when Officer Stockman noticed the children through the upstairs window during the initial approach and again when Plaintiff's oldest child opened the door. The SAC further states that the children had no observable injuries. In other cases where police responded to reports of abuse, the officers' inability to ascertain the well-being of potential victims supported the existence of exigent circumstances.[53] But here, the officers confirmed the well-being of the children, none of whom were visibly injured. Furthermore, when Plaintiff's partner spoke with the officers during the initial approach, she stated that the children were okay. These allegations do not support an objectively reasonable belief that the children faced imminent harm.

---

[52] *See McInerney v. King*, 791 F.3d 1224, 1233–34 (10th Cir. 2015) (finding no exigent circumstances where officers "did not overhear any commotion" inside the home, did not observe any altercation occurring inside, and did not discover anything suggesting that anyone inside was in need of emergency assistance).

[53] *See United States v. Stewart*, 528 F. App'x 879, 882–83 (10th Cir. 2013) (finding exigent circumstances where a report stated that a woman had been screaming in pain for a lengthy period of time, the defendant's physical demeanor suggested he had been involved in a physical altercation, and police were unable to ascertain the well-being of the purported victim); *United States v. Owen*, 65 F. Supp. 3d 1273, 1283 (N.D. Okla. 2014) (finding exigent circumstances where there was a report of a domestic violence incident involving a firearm, the purported victim appeared "upset and disheveled," and the purported victim's two children, whose well-being was unknown, were still inside the home).

The well-being of other individuals previously inside the Residence additionally supports the lack of an exigency. Plaintiff's partner denied that Plaintiff physically harmed her and had no observable injuries. The two juvenile guests who left from the back of the Residence had no observable injuries. At one point, Defendants' Memorandum describes their exit as "fleeing." But the SAC does not state that the responding officers believed the two guests were fleeing. What is stated is that the officers noticed the guests leaving and that the officers directed them to a car without asking any questions. This implies the officers knew why the car was waiting and why the two guests were leaving. At the very least, the Court will not assume that the officers believed the guests to be fleeing when the SAC offers an alternative reading.[54] The Court acknowledges that the two juvenile guests' backdoor exit could arouse some suspicion, but viewed in context, it does not support the type of urgency that motivates reasonable officers to dispense with the warrant requirement.

Defendants suggest that Officer Risner's command at the side window telling Plaintiff to "[l]et her go" evidences an objectively reasonable belief that the child was in imminent danger. This simply is not so. First, Officer Risner's command occurred *after* he entered the Residence's purported curtilage and thus is not relevant to whether the entry was objectively reasonable. Second, the command displays Officer Risner's subjective belief rather than an objective one. And an "officer's subjective motivation is irrelevant" when determining whether exigent circumstances were present.[55] Thus, this command does not sway the Court's analysis.

[54] *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("In applying this standard, we take Plaintiffs' well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences from the facts in favor of Plaintiffs.").

[55] *Brigham City*, 547 U.S. at 404.

Defendants also cite *Dalcour v. City of Lakewood*[56] for the proposition that physical harm is not a prerequisite for an objectively reasonable belief that a child is in imminent danger and that the existence of a volatile situation allows police to dispense with the warrant requirement. Indeed, physical harm is not required to establish an objectively reasonable belief, but merely describing a situation as volatile does not establish exigent circumstances.[57] "[E]xigency determinations are very fact-specific," and the facts in *Dalcour* are markedly different than those in the SAC.[58] *Dalcour* involved two police entries into a home: one supported by exigent circumstances and one that was not.[59] For the entry supported by an exigency, the officer arrived in response to an altercation between another officer and an occupant.[60] He further learned that a prior stabbing had occurred at the home, learned that people inside were violating a no contact order, and witnessed an occupant slamming a door against another officer.[61] This "extremely volatile situation" contrasts against—rather than compares to—the facts in this case.[62]

Presently, the report's contents, whether past abuse had occurred at the Residence, and whether officers understood the custody arrangement between Plaintiff and Plaintiff's co-parent are all unknown. Unlike the *Dalcour* plaintiffs, Plaintiff was not in violation of a no contact order but instead was exercising court-ordered parenting time. The SAC states that Officer Risner told Seargent Ivener that Plaintiff had court-ordered parenting time. It is thus reasonable to infer that Officer Risner knew this when he entered the curtilage, and Plaintiff's lawful contact with his

---

[56] 492 F. App'x 924 (10th Cir. 2012)

[57] *See Cortez*, 478 F.3d at 1124 ("[O]fficers may not simply recite urgent needs without factual support").

[58] *See United States v. Shively*, 2000 WL 249300, at *3 (D. Kan. Feb. 29, 2000).

[59] *Dalcour*, 492 F. App'x at 931–35.

[60] *Id.* at 928.

[61] *Id.* at 934–35.

[62] *See id.* at 935.

children is relevant to the exigency analysis. Furthermore, the SAC does not suggest that Plaintiff was volatile. Plaintiff refused to speak with officers and repeatedly told them to leave, displaying an unwillingness to cooperate. Yet this does not compare to the combativeness in *Dalcour* "which included the [p]laintiffs striking [an agent]."[63] None of the events leading to Officer Risner's warrantless entry significantly increased the likelihood of danger to support the existence of an exigency.

Because the SAC's facts do not support an objectively reasonable belief to enter the curtilage without a warrant, the Court need not address the second prong of the exigent circumstances test. Thus, the SAC sufficiently pleads that Officer Risner's warrantless entry violated Plaintiff's constitutional right to be secure against unreasonable searches.

b. Clearly Established Right

Of course, Officer Risner may still be entitled to qualified immunity if Plaintiff's right was not clearly established at the time of the violation. Depending on facts not within the SAC, the unlawfulness of Officer Risner's constitutional violation might not have been apparent.

In May 2024, after the events giving rise to this current action, the Tenth Circuit in *Lowther v. Children Youth & Family Department*[64] determined that an ambiguity existed in the caselaw involving exigent circumstances and reports of child abuse.[65] There, investigators entered a home without a warrant to perform a welfare check on two children after receiving a report detailing

[63] *See id.* at 934–35. Peculiarly, Defendants' Reply downplays the significance of the violence in *Dalcour*, as if the Tenth Circuit found the situation there volatile absent the violent behavior. Yet this reading prevaricates that the situation was deemed "extremely volatile" because of the physical violence itself. *Dalcour*, 492 F. App'x at 934–35 ("Finally, Seargent Griffith noted that the Plaintiffs were 'out of control,' based on behavior he observed after arriving at the scene, which included the Plaintiffs striking Agent Gillespie. In short, Seargent Griffith arrived at the Plaintiff's home to find an extremely volatile situation . . . ." (citation modified)).

[64] 101 F.4th 742 (10th Cir. 2024).

[65] *Id.* at 765.

very specific allegations of child abuse.[66] The Tenth Circuit recognized that a prior case, *Gomes v. Wood*,[67] obfuscated existing precedent by suggesting that an imminent threat of harm is not required to establish an exigency if there is reasonable suspicion that past abuse has occurred.[68] *Lowther* clarified "that even in the child welfare context, there must be a threat of imminent harm when officials enter a home or seize children without a warrant or judicial authorization."[69] Nevertheless, *Lowther* acknowledged that the investigators in that case "could have reasonably, but incorrectly, believed that under the Fourth and Fourteenth Amendments, exigent circumstances were present if there was reasonable suspicion of past abuse, even in the absence of imminent harm."[70] Thus, the defendants "did not violate clearly established law so long as they had reasonable suspicion of past abuse" due to the ambiguity created by *Gomes*.[71]

The warrantless entry here occurred before the clarification in *Lowther*. Depending on the report's contents and what Officer Risner knew regarding Plaintiff's relationship with his children, reasonable suspicion of past abuse may have permitted his warrantless entry despite being legally incorrect. However, under the Rule 12(b)(6) standard, it would be improper for the Court to dismiss the SAC at this time.[72] The Court cannot blindly speculate on the report's contents or presume they supported reasonable suspicion. The SAC's facts do not give rise to an exigency, and the lack of an exigency renders the warrantless entry a violation of the Fourth Amendment.

---

[66] *Id.* at 748–51.

[67] 451 F.3d 1122 (10th Cir. 2006).

[68] *Lowther*, 101 F.4th at 765.

[69] *Id.* at 766.

[70] *Id.*

[71] *Id.*

[72] *See Robbins*, 519 F.3d at 1249 (A complaint need not include "all the factual allegations necessary to sustain a conclusion that [a] defendant violated clearly established law.").

And being secure in his home against a warrantless entry is a clearly established right that Plaintiff possesses.[73]

Accordingly, the SAC satisfies the plausibility standard to overcome the assertion of qualified immunity regarding Officer Risner's curtilage entry, and thus this claim may proceed as alleged against Officer Risner.

2. *Officer Zarnowiec's Command into the Residence*

Next, Plaintiff argues that when Officer Zarnowiec spoke to one of Plaintiff's children, who was standing behind a second-floor window, he performed a warrantless search in violation of the Fourth Amendment.[74] Defendants highlight that the SAC does not plead where Zarnowiec was standing when he was making these commands. Thus, they argue that the SAC fails to allege enough facts to satisfy the pleading standard of Rule 12(b)(6).

The Court agrees with Defendants. The SAC lacks sufficient detail to demonstrate how this was a violation of Plaintiff's Fourth Amendment right, merely stating that Officer Zarnowiec gestured at the child to open the window.[75] It does not state where he was standing when he made this command nor the substance of what he communicated to the child. Certainly, the front door area remains constitutionally protected,[76] and in some cases an officer's issuance of a command

[73] *See Lundstrom v. Romero*, 616 F.3d 1108, 1129 (10th Cir. 2010) ("At the time of the alleged incidents, it was clearly established that a police officer cannot enter and search a home without a warrant and absent exigent circumstances. It was also clearly established that the same Fourth Amendment protections attaching to the home extend to curtilage." (citation modified)).

[74] Similar to the claim against Officer Risner discussed above, this claim pertains only to Officer Zarnowiec's actions and thus cannot be brought against the other Defendants.

[75] *Cf. Hulett v. Rodden*, 2026 WL 2517484, at *4 (10th Cir. Aug. 26, 2026) (finding that, where a pro se plaintiff's complaint lacked sufficient detail to demonstrate that officers' use of handcuffs injured him, that lack of detail could not support a finding that they had violated a clearly established right).

[76] *Florida v. Jardines*, 569 U.S. 1, 7 (2013) (explaining that "[t]he front porch is a classic exemplar of an area adjacent to the home" which is constitutionally protected).

can constitute an unlawful seizure.[77] However, because the SAC merely pleads that Officer Zarnowiec gestured for the child to open the window, the Court finds that this is not enough to establish an unconstitutional search.

Thus, this theory in Count I cannot go forward with respect to Officer Zarnowiec's commands to the child upstairs. Of course, because Plaintiff brings this action pro se, he may replead this claim to satisfy the detail required for the Rule 12(b)(6) standard.[78]

*3. Defendants' Warrantless Entry into the Residence*

Plaintiff third theory argues that Defendants violated his Fourth Amendment right to be secure in his home when they entered the Residence without a warrant. Defendants acknowledge that this entry was warrantless yet once again argue that exigent circumstances existed.

"[A] police officer's mere entry or trespass into a home without consent is enough to constitute a search, often referred to in the case law as an 'unlawful entry.'"[79] "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."[80] "[A] warrant is not required when exigent circumstances are present."[81] Still, it is an "especially heavy" burden to show the exigency exception applies when justifying the warrantless entry of a home.[82]

---

[77] *See United States v. Flowers*, 336 F.3d 1222, 1226–27 (10th Cir. 2003) (finding that, absent probable cause or exigent circumstances, the simple command of "open the door" into a person's home violated the defendant's Fourth Amendment right to be free from unlawful seizures).

[78] *See Hulett*, 2026 WL 2517484, at *4 (determining that, even though the pro se plaintiff failed to state a claim for relief on his § 1983 claims, he should be given an opportunity to amend his complaint).

[79] *Dalcour*, 492 F. App'x at 931 (quoting *Reeves v. Churchich*, 484 F.3d 1244, 1258 (10th Cir. 2007)).

[80] *Lowther*, 101 F.4th at 760 (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).

[81] *Id.* (citing *Brigham City*, 547 U.S. at 403).

[82] *Najar*, 451 F.3d at 717.

Because many of the same facts are relevant here as they were concerning Officer Risner's entry into the curtilage, the exigent circumstances analysis there is responsive to the constitutionality of the warrantless entry into the Residence. Thus, the Court incorporates those rules and standards here. The Court addresses the constitutionality of each Defendants' entry, beginning with Seargent Ivener's.

a. Seargent Ivener

The SAC states Seargent Ivener was briefed on the events that had transpired prior to his arrival. In addition to those events discussed above, the following pleaded facts are relevant for determining whether it was objectively reasonable to enter the Residence without a warrant: Plaintiff's continued refusal to open the door or communicate with officers, Officer Zarnowiec's interaction with the child in the upstairs window, Plaintiff's second-oldest child opening the door, and the child's emotional distress.[83] Again, nothing indicates that an active altercation or argument occurred during the period between Seargent Ivener's arrival and warrantless entry.

Defendants highlight an additional fact: Plaintiff's restraint of his oldest child inside the Residence. The SAC does not state Officer Risner witnessed such a restraint, but his command at the side window telling Plaintiff to "[l]et her go" supports this construction. But Seargent Ivener spoke with Officer Risner after he witnessed this restraint, and Officer Risner reasoned there was no cause for a criminal charge at that time. While the subjective intent of the officer performing the disputed entry is irrelevant, the impressions other officers share with that officer are relevant

[83] Defendants' Reply states that "the SAC alleges that Defendants responded to a call from Plaintiff's co-parent relaying information received from children inside the home that the children may be in danger and the number of people inside the house was unknown." This assumes facts absent from the SAC. All that is stated regarding the report is that it involved an allegation of abuse and that this information was relayed from the children to the co-parent. Further, the SAC never alleges that the officers lacked information regarding the number of individuals inside the Residence.

in determining whether the entry was objectively reasonable.[84] Officer Risner's conclusion that no criminal charge could be brought would indicate to a reasonable officer that the restraint was not harmful or abusive. Consequently, this restraint did not make it objectively reasonable for Sergeant Ivener to believe that the children faced imminent harm.

Additionally, the other facts do not support an objectively reasonable belief that an exigency existed. Following Sergeant Ivener's arrival, Officer Zarnowiec made visual confirmation as to one of the children's well-being when he spotted the child in the window and tried to communicate with them. This does not indicate that the children were in imminent harm. And though Plaintiff continued refusing to speak with the officers, this refusal does not give rise to a risk of imminent harm,[85] especially following further confirmation of the children's well-being and Officer Risner's conclusion that Plaintiff's behavior did not support a criminal charge.

The only new event materially differentiating Sergeant Ivener's entry into the Residence from Officer Risner's entry into the curtilage occurred when Plaintiff's second-oldest child opened the front door. The SAC states that the child opened the door in response to Sergeant Ivener's knocking and "was not crying when she opened [it]." It then states that she became emotionally distressed after engaging with Sergeant Ivener but did not report any injuries or identify anyone needing aid inside. Following her opening the door, Sergeant Ivener "crossed the [Residence's]

---

[84] *See Dalcour*, 492 F. App'x at 934–35 (finding that a sergeant's warrantless entry was supported by an exigency even though, based on the statements of a fellow officer, he was mistaken that one of the plaintiffs was the perpetrator of an earlier stabbing); *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) ("[A] police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." (citation modified)).

[85] *See Kentucky v. King*, 563 U.S. 452, 469–70 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time." (citation modified)).

threshold immediately."[86] Plaintiff and Defendants debate the significance of this event and whether it created an objectively reasonable belief for Sergeant Ivener to enter the Residence. Defendants point out that exigent circumstances are evaluated as they appeared to the officer, and from Sergeant Ivener's perspective, he did not know when the emotional distress began.[87] But the SAC makes clear that when the child opened the door, she was not emotionally distressed and only became so after interacting with Sergeant Ivener. Relatedly, the delay between the child opening the door and her distress is something that paper and ink cannot easily capture. It is thus improper to dismiss this claim based on temporal speculation.

Sergeant Ivener may contest the SAC's account of events. But, based solely on the SAC's facts, Defendants' burden of showing exigent circumstances at the first step of the qualified immunity analysis is not satisfied here. Additionally, this Court's discussion about the potential impact of *Lowther* on Officer Risner's warrantless entry is comparably relevant to Sergeant's Ivener's warrantless entry at the second step. But as concluded there, this Court cannot ascertain whether reasonable suspicion of past abuse existed for Sergeant Ivener given that various facts remain unknown. Therefore, Plaintiff's SAC satisfies the Rule 12(b)(6) standard for this claim as alleged against Sergeant Ivener and overcomes the assertion of qualified immunity.

b. Officers Isaac, Risner, Stockman, and Zarnowiec

As for Officers Isaac, Risner, Stockman, and Zarnowiec, Defendants raise two arguments for why their warrantless entries were justified. First, they argue exigent circumstances existed, but as discussed *ad nauseam* above, the SAC facts do not support an objectively reasonable belief

---

[86] *Id.* ¶ 42.

[87] Defendant's Memorandum states that the "child's emotional distress only began *when she opened the door* for Sergeant Ivener." This argument thus mischaracterizes the SAC's facts regarding when the child's emotional distress began.

that such circumstances existed. Their remaining argument posits that, because Sergeant Ivener entered the Residence, his safety was compromised if they allowed him to enter alone.

The same argument was rejected by the Tenth Circuit in *McInerney v. King*.[88] There, a deputy performed a warrantless entry absent exigent circumstances.[89] The officer who followed the deputy into the home argued that, even if exigent circumstances did not permit the deputy's entry, the officer's entry was reasonable to provide back-up protection.[90] The Tenth Circuit disagreed, explaining that officers may not create the exigent circumstances to justify a warrantless entry, and any danger faced by the deputy was a result of his decision to enter the home unlawfully.[91] Thus, the officer could not "justify his entry by a need to protect [the deputy] where no emergency existed to justify [the deputy]'s entry."[92]

Accordingly, the SAC sufficiently pleads enough facts for this claim to satisfy the Rule 12(b)(6) standard.

*4. Continued Interior Presence and Upstairs Search*

Plaintiff's fourth theory argues that continued presence in the Residence's interior and the upstairs search of the Residence further violated his Fourth Amendment rights. Defendants only argument for why this search was permissible rests on the exigent circumstances exception. As discussed above, the Court rejects this argument. Because the SAC's facts do not support the existence of an exigency, the qualified immunity defense does not apply at this stage. Thus, save for the claim against Officer Zarnowiec, Count I satisfies the Rule 12(b)(6) standard.

---

[88] 791 F.3d 1224 (10th Cir. 2025).

[89] *Id.* at 1234–35.

[90] *Id.* at 1235.

[91] *Id.*

[92] *Id.*

**B. Count II: Excessive Force**

The Court now addresses Plaintiff's excessive force claim against Sergeant Ivener in Count II. Plaintiff argues that Sergeant Ivener violated the Fourth Amendment's prohibition of unreasonable seizures by grabbing Plaintiff and throwing him to the floor after Plaintiff refused access to the Residence's second floor. Sergeant Ivener invokes qualified immunity, arguing this force was necessary to ensure the safety of the children and because Plaintiff was physically impeding Sergeant Ivener. Thus, the Court must determine whether Plaintiff's constitutional right was violated and whether that right was clearly established under the qualified immunity analysis.

*1. Violation of a Constitutional Right*

"Claims that state actors used excessive force—deadly or not—in the course of a seizure are analyzed under the Fourth Amendment's reasonableness standard."[93] "Under this standard, 'the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"[94] Plaintiffs must allege that "a 'seizure' occurred and that the seizure was 'unreasonable.'"[95] Sergeant Ivener does not argue that grabbing Plaintiff and throwing him to the floor was not a seizure. Thus, the Court analyzes whether this seizure was reasonable.

Officers are not required "to use the least intrusive means in the course of a detention, only reasonable ones."[96] In determining the reasonableness of the seizure, courts recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

[93] *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

[94] *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (quoting *Graham*, 490 U.S. at 397).

[95] *Roska ex rel. Roska*, 328 F.3d at 1243 (quoting *Brown v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)).

[96] *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994).

situation."[97] Thus, "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective."[98] It should not be judged "with the 20/20 vision of hindsight."[99] Courts consider the three *Graham* factors when determining whether an officer's actions were objectively reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[100] Still, other facts may be considered as the analysis is ultimately dependent upon the totality of the circumstances.[101]

The Court finds that two of the three *Graham* factors weigh against Sergeant Ivener. For the first factor, the severity of the crime at issue, courts ask, "whether the force used 'would have been reasonably necessary *if the arrest or the detention were warranted*.'"[102] As established, there was no objectively reasonable basis for Sergeant Ivener's concern regarding child abuse. Therefore, only two crimes are at issue: battery of a law enforcement officer and interference with law enforcement. In Kansas, battery of a law enforcement officer is a misdemeanor, and interference with law enforcement is a misdemeanor or felony depending on the underlying offense.[103] Discussed in greater detail below, the facts form a faulty basis for a battery charge against Plaintiff, especially considering the context leading up to Plaintiff's contact with Sergeant Ivener. However, the Tenth Circuit directs this Court to "assume the arrest was valid" for the first

---

[97] *Graham*, 490 U.S. at 397.

[98] *Saucier*, 533 U.S. at 205.

[99] *Graham*, 490 U.S. at 396.

[100] *Id.*

[101] *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

[102] *Morris*, 672 F.3d at 1195 (quoting *Cortez*, 478 F.3d at 1126).

[103] K.S.A. §§ 21-5413(h)(3)(A), 21-5904(b)(5)(A)–(B). Based on the SAC's pleaded facts, the Court reasonably infers that the battery charge was based on § 21-5413(h)(3)(A), a misdemeanor, not § (h)(3)(B) or (C), which are felony offenses.

*Graham* factor.[104] Because the Tenth Circuit has found that a forceful takedown could be reasonable for the misdemeanor of assault, such force is similarly reasonable for the misdemeanor of battery.[105] Thus, the first factor weighs slightly in Sergeant Ivener's favor.

The second factor—whether Plaintiff posed an immediate threat to the officers or others—is "undoubtedly the 'most important' and fact intensive factor in determining the objective reasonableness of an officer's use of force."[106] The Court considers "whether the officers [or others] were in danger at the precise moment that they used force."[107] Based on the SAC, no one was in danger at the precise moment Sergeant Ivener used force. Plaintiff remained standing on the bottom step with two of his children during the interaction. He repeatedly asked the officers to leave, was unarmed, never approached the officers, and made no threatening motions or statements.[108] Instead, it was Sergeant Ivener who came into close proximity with Plaintiff, waved his hands in Plaintiff's face, and initiated physical contact. It is true that one of the children told Sergeant Ivener that another child was upstairs. And Plaintiff continued to ignore Sergeant Ivener's commands. But cases where lack of cooperation supported the use of force due to safety concerns hinge on the fact that the failure to cooperate posed a genuine threat.[109]

Here, the child made no indication that the other child was injured, and up to this point, officers had visually confirmed the children's well-being multiple times, which had been relayed

---

[104] *See Morris*, 672 F.3d at 1195.

[105] *See id.*

[106] *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017).

[107] *Andersen v. DelCore*, 79 F.4th 1153, 1165 (10th Cir. 2023) (alteration in original).

[108] *See Morris*, 672 F.3d at 1196 (finding it significant that the individual "carried no weapon, made no overt threats, and did not get in reach of [the officer]" when determining whether the individual posed an immediate threat).

[109] *See, e.g.*, *Mecham v. Frazier*, 500 F.3d 1200, 1204–05 (10th Cir. 2007) (finding the use of force necessary where the plaintiff refused to exit her vehicle and remained in control of her vehicle throughout the interaction, which occurred on the narrow shoulder of a busy highway).

to Sergeant Ivener. Furthermore, nothing inside the Residence following the warrantless entry evidenced that an altercation had occurred. And at the precise moment Sergeant Ivener threw Plaintiff to the floor, Plaintiff's only physical contact with Sergeant Ivener was when Sergeant Ivener grabbed his arm and sent him off balance. This factor thus weighs against Sergeant Ivener.

Finally, the Court addresses the third *Graham* factor. "Like the second factor, when evaluating the third factor [the Court] considers whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force."[110] The "resistance need not be physical."[111] Here, Plaintiff resisted Sergeant Ivener's commands by refusing to move. However, while an officer may use reasonable force to effectuate lawful commands,[112] Sergeant Ivener's presence in the Residence was unlawful as he had entered absent a warrant or an exigency.[113] Thus, his commands were unlawful, and Plaintiff had no obligation to follow them. And because Sergeant Ivener attempted to force his way past Plaintiff through a small gap and grabbed Plaintiff's arm while doing so, it is unreasonable to characterize Plaintiff's reactive contact with Sergeant Ivener as resistance.[114] Plaintiff did not attempt to flee and was not told he was under arrest until after Sergeant Ivener threw him to the floor. He further made no

---

[110] *Andersen*, 79 F.4th at 1165 (citation modified).

[111] *Id.*

[112] *Id.* at 1164–66 (finding an officer's use of force was reasonable where the force was minimal and used to prevent the destruction of evidence involving child abuse, the belief of which was supported by probable cause).

[113] *See Rhoades v. Bowling*, 2026 WL 1195854, at *16 (N.D. Okla. May 1, 2026) (finding the third *Graham* factor weighed against an officer where the plaintiff refused to obey the officer's unlawful orders which were made absent a warrant or an exigency).

[114] *Cf. Becker v. Bateman*, 709 F.3d 1019, 1026 (10th Cir. 2013) (determining that, in the summary judgment context, jurors could find an individual's hand movement away from a wrist lock was reflexive and thus not resistance of an arrest).

attempt to resist after being brought to the floor.[115] Therefore, the third factor also weighs against Sergeant Ivener.

Based on the foregoing, the second and third *Graham* factors weigh against Sergeant Ivener, rendering his use of force unreasonable. Thus, Plaintiff pleads sufficient facts to overcome the first prong of the qualified immunity analysis.

*2. Clearly Established Right*

The Court next considers whether Plaintiff demonstrates that this constitutional right was clearly established at the time of Sergeant Ivener's use of force. Plaintiff cites two cases to support that his constitutional right was clearly established at the time of the use of force: *Casey v. City of Federal Heights*[116] and *Morris v. Noe*.[117]

*Casey* is not applicable here. For one, the crimes at issue in *Casey*—removing an official record and obstructing government operations—are distinctly different than those at issue here.[118] Additionally, the force used in *Casey*—tackling the plaintiff to the ground and discharging a taser multiple times—is greater than the force used here.[119] Thus, *Casey* is not sufficiently similar to establish that Sergeant Ivener's use of force clearly violated a constitutional right.

*Morris*, however, is sufficiently applicable. *Morris* involved a § 1983 action brought on behalf of the plaintiff's deceased husband.[120] Those facts involved a domestic disturbance where two individuals had engaged in an altercation that caused damage to personal property.[121] The

---

[115] *See Morris*, 672 F.3d at 1196 (noting that the individual "did not struggle with officers before or after they took him to the ground" to support that the third factor weighed in favor of the individual).

[116] 509 F.3d 1278 (10th Cir. 2007).

[117] 672 F.3d 1185 (10th Cir. 2012).

[118] *Casey*, 509 F.3d at 1281.

[119] *Id.* at 1280.

[120] *Morris*, 672 F.3d at 1188.

[121] *Id.* at 1189.

husband then arrived at the scene after officers had already responded.[122] By then, the situation was under control.[123] The husband spoke to one of the individuals involved, but when the individual began approaching him, he backed away from the individual and toward the officers.[124] In response, the officers lunged at the husband, threw him to the ground, and handcuffed him.[125] The Tenth Circuit found that, under the three *Graham* factors, the husband had not posed an immediate threat to anyone.[126] It further found that the husband's "right to be free from a forceful takedown was clearly established."[127]

The officers in *Morris* engaged in force before making any commands to the husband, whereas Sergeant Ivener engaged in force after Plaintiff ignored his commands and obstructed passage to the second floor. However, the officers' presence in *Morris* was lawful based on a confirmed domestic altercation where personal property had been damaged. No such evidence existed here, rendering Sergeant Ivener's commands made absent a warrant or exigency unlawful. And like the husband in *Morris*, Plaintiff posed no threat to the officers or others, nor did he actively resist arrest or attempt to flee. Lastly, while this case does not involve the same misdemeanor as the one at issue in *Morris*, the charge of assault is sufficiently similar to that of battery and interference with law enforcement.

*Morris* plainly indicates that the right to be free from a forceful takedown, absent compelling circumstances justifying such force, is a clearly established constitutional right. While not an exact copy, it is sufficiently analogous to establish that—where an officer is unlawfully in

---

[122] *Id.* at 1189–90.

[123] *Id.* at 1190.

[124] *Id.*

[125] *Id.*

[126] *Id.* at 1195–96.

[127] *Id.* at 1198.

a residence, the individual does not pose a threat to the officer or others, and the individual is not physically resisting or fleeing—a forceful takedown of that suspect clearly violates a constitutional right. Even if *Morris* was not sufficiently analogous, the Court may conclude a constitutional right was clearly established if the force is clearly unjustified based on the three *Graham* factors.[128] Based on the discussion above, the *Graham* factors clearly establish that the force used here was unjustified. Facts may come to light that change this Court's determination regarding the existence of an exigency or the nature of Sergeant Ivener's interaction with Plaintiff. However, at this stage, the qualified immunity defense does not warrant dismissal of the excessive force claim.

Consequently, the SAC sufficiently pleads facts satisfying the Rule 12(b)(6) standard with respect to Count II.

**C. Count III: Arrest Without Probable Cause**

Finally, the Court addresses Plaintiff's unlawful arrest claim in Count III. Plaintiff contends that Sergeant Ivener's arrest was without probable cause. Sergeant Ivener opposes this argument. He claims that Plaintiff's contact with him viewed in context, as well as the existence of exigent circumstances, established probable cause.

"A warrantless arrest is permissible where an officer 'has probable cause to believe that a person committed a crime.'"[129] An arrest is thus unlawful and actionable under § 1983 when made absent probable cause or a warrant supported by probable cause.[130] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge . . . are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or

[128] *Id.* at 1197–98.

[129] *Cortez*, 478 F.3d at 1115 (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).

[130] *Demster v. City of Lenexa*, 352 F. Supp. 2d 1165, 1171 (D. Kan. 2005).

is being committed by the person to be arrested."[131] This is an objective standard; thus an officer's subjective intent is not dispositive.[132] "Whether a reasonable officer would believe that there was probable cause to arrest in a given situation is based on the totality of the circumstances."[133]

Whether Sergeant Ivener had probable cause depends on the facts available to a reasonable officer at the time of the arrest.[134] Sergeant Ivener first argues that exigent circumstances justified his arrest by supplying probable cause that Plaintiff posed a danger to others and thus was interfering with a police investigation. As stated, the SAC's facts do not support the existence of an exigency when Sergeant Ivener made the arrest. Thus, Plaintiff did not interfere with a lawful police investigation at the time of the arrest. Consequently, the Court rejects this argument. It therefore only focuses on Sergeant Ivener's remaining argument: whether Plaintiff's physical contact with Sergeant Ivener provided probable cause for the arrest.

"[M]erely touching a police officer is insufficient to create probable cause; the Court must look at why the plaintiff is touching the officer and the context of the touching."[135] Here, Sergeant Ivener initiated contact with Plaintiff by grabbing his arm. Even if he had not grabbed Plaintiff's arm, physical contact with Plaintiff was a likely result given that Sergeant Ivener attempted to pass through a space only four to six inches wide between Plaintiff and the wall to ascend the stairs. Plaintiff asserts that, because of this contact, he lost balance from where he stood on the staircase's

---

[131] *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986)).

[132] *Id.*

[133] *Id.*

[134] *Morris*, 672 F.3d at 1191.

[135] *Taylor v. Hudson*, 2003 WL 27384951, at *6 (D.N.M. Nov. 12, 2003) (citing *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)).

bottom step and placed an open palm on Sergeant Ivener's upper body. Sergeant Ivener responded by throwing Plaintiff to the ground and announcing that he was under arrest.

Sergeant Ivener cites *Jones v. Boeckman*[136] for the proposition that probable cause for battery of a law enforcement officer is not necessarily negated when an officer is the one who first initiates physical conduct. That may be true, but the context surrounding Plaintiff's contact here is noticeably different than the context in *Jones*. There, the suspect's contact—grabbing at an officer's sleeve, grabbing an officer's hand, and pulling his upper arms forward to lock the officer's arm between the suspect's arm and back—was unmistakably intentional.[137] It further occurred while the suspect was being escorted by officers and after he had been placed in handcuffs.[138] Unlike the contact in *Jones*, Plaintiff's contact was made instinctively due to a loss of balance directly caused by Sergeant Ivener's own physical contact. Given this context, it would not be reasonable to believe that Plaintiff's contact was made knowingly as to give Sergeant Ivener probable cause to arrest Plaintiff for battery on a law enforcement officer.

Furthermore, this constitutional violation was clearly established at the time of the arrest. The question here is whether Sergeant Ivener "should have known that [he] lacked probable cause to arrest" Plaintiff.[139] To be charged with battery on a law enforcement officer in Kansas, a person must "*knowingly* caus[e] physical contact with another person" in a "rude, insulting, or angry manner."[140] If an officer has reason to know that a person's physical contact was accidental, then

[136] 2021 WL 1056503 (D. Kan. Mar. 18, 2021).

[137] *Id.* at *5.

[138] *Id.*

[139] *Demster*, 352 F. Supp. 2d at 1174.

[140] K.S.A. § 21-5413(a)(2) (emphasis added). K.S.A. § 21-2514(c)(1) defines battery against a law enforcement officer to include battery "as defined in subsection (a)(2)." A person may also commit a battery offense by "knowingly or recklessly causing bodily harm to another person." § 21-2514(a)(1). However, the SAC does not suggest that Sergeant Ivener was harmed by Plaintiff's contact or that Plaintiff's contact with Sergeant Ivener was the type of contact which could reasonably cause bodily harm.

that officer lacks probable cause to arrest the person for battery as the contact was not made "knowingly."[141] This is even more apparent if the officer has reason to know that his own conduct caused the person's accidental contact.[142] Thus, a reasonable officer would have known that Plaintiff's accidental contact with Sergeant Ivener did not give rise to probable cause. Consequently, the SAC sufficiently pleads facts that overcome the qualified immunity defense with respect to Count III.

In conclusion, save for the claim against Officer Zarnowiec's issuance of commands into the Residence, all of the SAC's Counts satisfy the Rule 12(b)(6) standard.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 29) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 18) is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated this 10th day of November, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[141] *See* § 21-5413(a)(2); *cf. Martinez v. City & Cnty. of Denver*, 2013 WL 5366980, at *7–8 (D. Colo. Sep. 25, 2013) (finding that, where a person incidentally bumped an officer, the incidental contact would not give an objectively reasonable officer probable cause that the person intended to cause bodily injury). The Court observes that it is possible for a battery charge to be based on accidental contact where that contact causes bodily harm and was made recklessly. *See* § 21-5413(a)(1); *State v. Spicer*, 30 Kan. App. 2d 317, 42 P.3d 742, 748 (2002) (explaining that, where an offense allows a recklessly culpable mental state, that offense can be satisfied by "accidental physical contact which harms the person"). However, based on the pleaded facts, the SAC more reasonably suggests that this battery charge was based on § 21-5413(c)(2)(B), which specifically requires a "knowingly" culpable mental state and thus cannot be accidental. *See* § 21-5202(i).

[142] *Taylor*, 2003 WL 27384951, at *8 (finding that "a reasonable fact finder could conclude that [the officer] did not have probable cause to arrest [the plaintiff] because [the officer] knew that he was the one who initiated, instigated, and caused the initial physical confrontation between himself and [the plaintiff]").